## Tillmes *versus* Marsh *et al.*

| 67  | 507 |
| 170 | 271 |

67   507
203   166

1. A bill set out that Huckel owned adjoining lots on which adjoining houses had been built, leaving an alley between them over which one of the houses was built, the party-wall being thus on one side of the alley. He devised one lot to one son and the other lot, being that over the alley, to another, both with the use of the alley. The plaintiff held title from the devisee of the first lot, the defendant from the other. The plaintiff claiming that the title to the soil over which the alley was laid was in him, and setting out acts of the defendant interfering with his rights, asked for a decree to

restrain defendant from so interfering, and that the boundary line should be run so as to give him the whole soil of the alley. *Held*, that this was an ejectment bill and could have been demurred to as such.

2. To give chancery jurisdiction as to disputed boundary, some equity must be superinduced by the acts of the parties.

3. The Acts of April 15th 1858 and April 5th 1859 did not vest in the courts there named more than the recognised jurisdiction of a court of chancery in the premises, to determine equitable not legal rights.

4. An Act of Assembly transferring any part of the jurisdiction of the common-law courts to a court of chancery, would be unconstitutional.

5. The bill in this case set up only a legal right, for the invasion of which ejectment is an adequate and complete remedy.

6. Ejectment will lie to recover possession of the soil subject to either a public or private easement.

7. North Penna. Coal Co. *v.* Snowden, 6 Wright 488, Norris's Appeal, 14 P. F. Smith 275, recognised.

February 23d 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Appeal from the decree at Nisi Prius: In Equity: No. 71, to January Term 1868.

This was a bill in equity by Augustus Tillmes against the New York Dyeing and Printing Establishment and Samuel Marsh.

The bill charged that Hieronimus Warner at different dates purchased two lots of ground, situate on the west side of Eighth street, in the city of Philadelphia, one of them commencing 206 feet southward from Arch street, and containing in front 20 feet, and the other adjoining on the south, and containing in front 16 feet, both of the depth of 99 feet. That on February 14th 1834, the fee simple of said lots became vested in William Huckel by deed from John F. Warner, in whom the title had vested under proceedings in partition. That William Huckel, by his will, duly proved September 22d 1834, devised the first-mentioned lot and the brick messuage thereon erected, then No. 36 (now No. 42) N. Eighth street, after the decease of his wife to his son Jacob Huckel, in fee tail, and the messuage No. 34 (now No. 40), the premises second above mentioned, to his son Robert Huckel, together with the free use and privilege of a three-feet wide alley, between said properties, which alley was averred to be wholly on the side of the said lot so devised to Jacob Huckel.

That on February 15th 1853, Jacob and Robert procured to be made by Samuel H. Kneass, city surveyor, a survey and plan of said premises, whereby the lot of said Jacob is laid down as containing 19 feet 9¾ inches in front, and the premises of said Robert as containing in front 16 feet 1½ inches.

That by deed dated October 13th 1858, Jacob Huckel, for the purpose and with the intent of barring the entail, granted unto Robert Huckel in fee the first-mentioned premises, described as follows: beginning 87 feet 11¼ inches north of north side of Filbert street, containing in front 19 feet 9¾ inches, and in depth 99

[Tillmes *v.* Marsh.]

feet, and that Robert Huckel by deed endorsed of same date reconveyed the same unto Jacob Huckel in fee. That Jacob Huckel by deed dated January 23d 1866, granted the premises last mentioned to plaintiff in fee. That the title to the premises No. 34 N. Eighth street, by divers mesne conveyances, became vested in Samuel Marsh, one of the defendants, who, it was charged, bought the same for the use of the New York Dyeing and Printing Establishment, who hold the same as tenants. That the main houses on said lots were originally of the depth of 20 feet, but appear to have been extended the further depth of 12 feet or thereabouts, and that access to the alley from defendants' house was obtained through a gate or door in the fence immediately in the rear of the main building on their lot. That defendants after their purchase caused a survey of their lot to be made, tore down their fence, closed up and abandoned the opening into said alley, and, without leave of plaintiff, broke a doorway through the party-wall further to the eastward than the old opening through the fence, placed a door therein, and opened a window in the second story, and a window in the westernmost wall over the alley of their house, and claim to use and maintain the same. That about the same time the defendants raised the floors of the house No. 34, and let the joist for the same into new holes made for the purpose in the wall dividing said houses. That defendants claimed a fee simple to said alley-way to the depth of 34 feet 8 inches.

The prayers were:—

1. That defendants be enjoined from keeping the doorway in the first story, the window in the second story and the opening in that part of the western wall overhanging the alley.

2. That they be enjoined from using said wall for the support of said joists and said house, and that they cease overhanging the said alley with the upper stories of said house.

3. For a decree that the boundary line between said houses commences 80 feet 11¼ inches north of Filbert street, and runs thence westward through the centre of the wall on south side of said alley to the whole depth of said lots.

4. Other relief.

An answer, &c., having been put in, the case was referred to James Parsons, as examiner and master.

The principles on which the case was decided by the Supreme Court render it unnecessary to give the averments of the answer or state the testimony taken before the examiner.

The master reported that the prayers of the bill should be granted.

Exceptions were filed to the report, which was confirmed at Nisi Prius.

The defendants appealed to the Supreme Court, assigning the decree at Nisi Prius for error.

[Tillmes *v.* Marsh.]

*C. D. Freeman* and *G. W. Biddle,* for appellants.—The bill at most sets up a case for which there is a complete remedy at law. Equity therefore has no jurisdiction: Kerr on Injunctions 209, and cases in note U; Rhea *v.* Forsyth, 1 Wright 503; North Penna. Coal Co. *v.* Snowden, 6 Id. 490. See also Schlecht's Appeal, 10 P. F. Smith 172; Clark's Estate, 12 Id. 447.

*J. C. Longstreth* and *J. B. Townsend,* for appellee, referred to Vollmer's Appeal, 11 P. F. Smith 118; McGowin *v.* Remington, 2 Jones 56.

The opinion of the court was delivered, March 2d 1871, by

SHARSWOOD, J.—The case presented by the plaintiff's bill, divested of immaterial circumstances, is this: William Huckel, by purchase, became the owner of two adjoining lots, which had been originally conveyed by two separate deeds to a person from whom he deduced title—one as of the width of 20 feet and the other of 16 feet. Two houses had been built on these two lots, a three-feet wide alley being laid out between them, so as to leave about $16\frac{1}{2}$ feet upon each side of it. One of the houses was built entirely over the alley-way, and the party-wall between the two houses was accordingly on one side of the alley. The house thus built over the alley was erected on the smaller of the two lots. William Huckel devised the one messuage and lot and the house thereon erected to his son Jacob, under whom the plaintiff claims, and the other lot, messuage and tenement, being that built over the alley-way, to his son Robert, under whom the defendants claim. Both these devises were "with the free use and privilege of the three-feet wide alley." The plaintiff insists that the title to the soil over which the alley is laid out is in him according to the original lines of the lots, confirmed, as he alleges, by a subsequent deed from Robert to Jacob. He sets out several acts of defendants interfering with his right, under a claim of a fee simple in the said alley-way to the depth of 34 feet 8 inches, and prays for relief that defendants be enjoined from keeping the doorway in the first story, the window in the second story and the opening in that part of the western wall overhanging the alley; that they be enjoined from using the wall for the support of their joists and house, and that they cease overhanging said alley with the upper stories of said house; and for a decree that the boundary line between the said houses shall be run so as to throw the whole soil of the said alley into the plaintiff's lot, and be so continued to the whole depth of said lots.

It certainly does not require any elaboration to prove that this is a mere ejectment bill, and might have been demurred to as such: 2 Danl. Chan. Prac. 29. In Loker *v.* Rolle, 3 Ves. 4, a bill in many respects similar to this, Lord Rosslyn said: "Upon

[Tillmes v. Marsh.]

the face of the bill it is quite clear the plaintiff may draw a declaration in ejectment. The bill states the title, and that by some means or other the same persons are in possession of all the lands, and have confounded the boundaries. * * * If he had filed a bill for discovery only, he must have prayed for the discovery; but it goes on to pray relief; that is merely an ejectment." It will be seen in this citation that an allegation that the defendants had confused the boundaries did not help the plaintiff's case. Indeed, nothing is better settled, than that to give chancery jurisdiction upon a question of disputed boundary, some equity must be superinduced by the acts of the parties: Wake v. Conyers, 1 Eden 331; 2 Lead. Cas. in Eq. 348. It is urged, however, that the Acts of Assembly of April 15th 1858, Pamph. L. 267, and April 5th 1859, Pamph. L. 359, confer upon the Supreme Court in and for the Eastern District of Pennsylvania, and the Court of Common Pleas of Philadelphia respectively, " All and singular the jurisdiction and powers of a court of chancery in all cases of disputed boundaries between adjoining and neighboring lands within the said county." The proper construction of these acts was considered in Norris's Appeal, 14 P. F. Smith 275, and it was there held that they conferred upon the courts therein named only jurisdiction in the determination of equitable, not of legal, rights. Indeed, the acts, by their very language, did not purport to vest more than the recognised jurisdiction of a court of chancery in the premises. It had been solemnly settled by this court in The North Penna. Coal Co. v. Snowden, 6 Wright 488, that an Act of Assembly which should attempt to transfer any part of the jurisdiction of common-law courts to a court proceeding according to the course of a court of chancery, and of course without a jury, would be beyond the power of the legislature. The language of the opinion of the court, by Mr. Justice Strong, is very emphatic: " Trial according to the course of a court of chancery, is trial by a single judge. But if there is any right to which, more than all others, the people of Pennsylvania have clung with unrelaxing grasp, it is that of trial by jury. They brought it with them from the land of their fathers. In every constitution which has been adopted they have taken care to secure it against infringement, and put it beyond the power of the executive, the legislature or the courts, to take it away from any individual." He proceeds to argue that the Constitution, Art. V., sect. 6, " cannot mean that the legislature may confer upon the Supreme Court and the Courts of Common Pleas the power of trying, according to the course of chancery, any question which has always been triable according to the course of law by a jury. If it can, then an ejectment founded solely on legal title, an action of debt on bond, or a replevin, or an action of trespass, may be sent into chancery, all contested facts in it be decided by the judge, and

[Tillmes *v.* Marsh.]

the intervention of a jury be unknown." He adds: "No power in our government can take from the litigant the right to have his case tried by a jury, substantially in the mode and with the same effect as that which belonged to jury trials in similar cases, when the Constitution of 1776 was adopted."

In this case complainant's bill sets up nothing but a legal right, invaded by the defendants, and for which the remedy by an action of ejectment is adequate and complete. The bill admits that the possession of the defendants extends over the alley. That is a trespass on plaintiff's close, if the title to the soil is in him. *Cujus est solum ejus est usque ad cœlum.* Ejectment will lie to recover possession of the soil, subject either to a public or private easement over it: Goodtitle *v.* Alker, 1 Barb. 133; Cooper *v.* Smith, 9 S. & R. 26. "It is no bar to a recovery," says Mr. Justice Duncan, "that another possesses a right of way or other easement, for the owner of the soil may maintain an ejectment for land over which a highway is laid out." There would be no difficulty here, the defendants being in the exclusive occupation, both under and above the alley, either in the sheriff's returning them as in possession on the summons in ejectment, or in giving possession to the plaintiff, if he should recover a verdict and judgment, upon the habere facias, subject to the right of way acknowledged to be in the defendants. We are of the opinion that the court has no jurisdiction of this bill.

> Decree reversed. And now it is ordered and decreed that the bill be dismissed at the costs of the complainant and appellee.