## P. S. DUNCAN ET AL. v. H. & G. IRON WORKS.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF BLAIR COUNTY.

Argued April 24, 1890—Decided October 6, 1890.

Where, on a bill filed to enjoin the defendant from the further mining of ore and for an account, it is disclosed that the legal right of the defendant to do the acts complained of is the controlling question in the case, and depends upon the construction of the will of a former owner under which both parties claim title, and all right in the defendant under said will is wholly denied by the plaintiff, it is not error to dismiss the bill for want of jurisdiction: North Penn. Coal Co. v. Snowden, 42 Pa. 488; Grubb's App., 90 Pa. 229; Ferguson's App., 117 Pa. 426.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 106 January Term 1890, Sup. Ct.; court below, No. 90, Eq. D., C. P.

In the court below, Peter S. Duncan, Sarah F. Duncan and John W. Duncan filed their bill in equity against the Hollidaysburg & Gap Iron Works, showing their title to certain ore lands under the will of Peter Shoenberger, who died in 1854, and, averring that the defendants were " constantly, continuously

and daily " trespassing upon said lands and taking ore there-
from, prayed : 1. For discovery of the defendants' title. 2. For
an injunction. 3. For " an account, which would be such an
account as would depend upon the construction of the rights
of the defendants ; being total, if the court are of opinion that
the defendants possess no rights in complainants' property ; or
partial, if the court are of opinion that although such right
existed the supply taken was excessive."  The provisions of the
will of Peter Shoenberger, deceased, the averments of the bill
and of the answers filed, sufficiently appear in the opinion of
the Supreme Court.

Issue having been joined, the cause was referred to *Mr. H.
M. Baldridge*, as examiner and master, who subsequently
reported in part as follows :

The principal subject of contention arises upon the con-
struction of the last will and testament of Dr. Peter Shoen-
berger, under whom both parties claim, and relates to the ore
rights or privileges pertaining to what is known as the Bloom-
field Furnace Mines.

Dr. Shoenberger, in his lifetime, was extensively engaged in
the iron business, and owned large and valuable properties,
including rolling-mills, furnaces, forges, ore-banks, etc.  Among
his properties were Bloomfield Furnace, Sarah Furnace, Rebecca
Furnace, Gap Furnace and Forge, and a large body of valuable
iron-ore deposits known as the Bloomfield Mines.  Dr. Shoen-
berger died in June, 1854, leaving a will dated June 14, 1852,
with six codicils thereto, the last of which was dated May 11,
1854, and which will and codicils were duly admitted to probate
in Philadelphia on the 28th and 29th of June, 1854.  By the
seventh clause of his said will he devised unto his daughter
Martha Duncan during her natural life, inter alia, Bloomfield
Furnace, with all the lands and tenements thereto belonging
in a schedule therein mentioned, and, also, generally, all other
lands which he might in his lifetime purchase for and attach
to said Bloomfield Furnace, although not specifically named,
and in said devise made the following reservation :

" And further reserving and excepting any such lands that
may be otherwise devised herein, and the right and privilege
hereinbefore and hereinafter devised to the owners of Rebecca

### Master's Report.

Furnace, Sarah Furnace, and Gap Furnace, for to mine and take away iron ore from any of the afore-mentioned or described lands enough to supply one furnace at Rebecca, one furnace at Sarah, and one furnace at Gap Works.   But the said right and privilege is not to be so exercised as to interfere with the operations of said Bloomfield Furnace and the Maria Forges; and I do hereby reserve the right and privilege to the owners of Sarah Furnace to make all such railroads or common roads through or over said Bloomfield Furnace lands (having reference to the best location of such roads, in doing as little violence and injury to said Bloomfield Furnace lands and property as possible) as shall be necessary to enable the owners of Sarah Furnace to convey their iron ore from the mine banks to said furnace;" And at her death he devised said lands, etc., unto her surviving children as tenants in common, and "as purchasers, and not by descent."

Mrs. Martha Duncan died March 28, 1863, leaving surviving her her husband, John W. Duncan, and three children, viz., Peter S. Duncan, John Collins Duncan, and Sarah F. Duncan. John Collins Duncan died September 1, 1878, intestate, unmarried, without issue, and leaving to survive him his father John W. Duncan, and his brother Peter S. Duncan, and sister Sarah F. Duncan.   The said John W. Duncan having died since the closing of the testimony in this case, the whole title to the Bloomfield Furnace property becomes vested in Peter S. Duncan and Sarah F. Duncan, who with John W. Duncan were the complainants in this bill.

The respondents are the present owners of the Gap Furnace property, which at one time belonged also to Dr. P. Shoenberger. . . . .

—The master then traced the title to the Gap Furnace property, from Peter Shoenberger through the Juniata Iron Manufacturing Co., and others, into the defendants; and, having stated the grounds upon which the plaintiffs claimed in their bill to be entitled to the relief prayed for, proceeded:

And the learned counsel of complainants in their arguments before the master did not abandon any of these positions. They denied that the defendants had any rights whatever in the premises.   They claimed that under the will of Dr. Shoenberger there was no express devise of an ore privilege to Gap

Furnace; that, while by the seventh clause or item in the will, Dr. Shoenberger reserved and excepted in the devise of Bloomfield Furnace to Mrs. Duncan and her children, "the right and privilege hereinbefore and hereinafter devised to the owners of Rebecca Furnace, Sarah Furnace, and Gap Furnace," yet in the fourth and fifth items of the will no ore rights were given to the devisees, and there was no hereinafter devise to Gap Furnace; and that the conveyance between the date of his will and the last codicil was a revocation of the devise. They further urged that there was no implied right or privilege under the reservation in the seventh clause of the will, and that, if there was, it was personal to the McCormicks, to whom Gap Furnace was first devised; and that if it could be held that there was some sort of an implied right which in some manner passed by subsequent devise, then such subsequent devise would merely vest the personal right in E. F. Shoenberger, and would not pass to his vendee. And in the amended bill the prayer is, " And if it be decreed that the defendants have any rights whatever in the premises, then in the alternative," &c. The complainants, therefore, denying that the defendants have any rights whatever in the premises, has the equity side of the court jurisdiction of the matter in controversy? The master is of the opinion it has not.

The questions are purely legal, and depend entirely on the construction to be placed on the will of Dr. Shoenberger. Courts of equity will interfere by injunction to protect the clear rights of suitors, but not when they are uncertain, doubtful, or disputed, and depend on the legal construction of deeds, etc. The Supreme Court, in Grubb's App., 90 Pa. 228, say that the proper construction of a deed is a legal question, and is not the subject of equity jurisdiction. On the same principle, equity has not jurisdiction where the title depends on the construction of a will. The reason for the rule is the same. The same case rules that " a bill in equity is not a panacea; " it was never intended nor has it ever been used to settle disputed rights in trespass; that where the right is clear it will restrain the commission of repeated acts of trespass, on the sole ground of preventing a multiplication of suits.

Here the plaintiffs charge the defendants to be trespassers, having no rights in the premises; while the defendants claim

Master's Report.

they have a clear right, exercised and recognized for years. In North Penna. Coal Co. v. Snowden, 42 Pa. 488, it was held that while it may be admitted that a bill will lie by one tenant in common to restrain waste or procure partition, yet even in such cases, confessedly within the jurisdiction of a court of equity, such a court would not interfere if complainant's title be denied, without he has vindicated it at law; that, to obtain an injunction the plaintiff's right must be acknowledged or established; that, where the title is legal, the case is not within the jurisdiction of a court of equity.   There, no tenancy in common was charged, and the bill, as in this case, as the gravamen of complaint denied the defendant's title.

In Long's App., 92 Pa. 179, it was ruled that when an account prayed for is but incidental to and dependent upon the determination of the title, the title must first be settled in favor of the plaintiff or he can have no account.   An injunction will never be granted except in a clear case; never, when the whole title is in dispute; nor, unless the plaintiff is without an adequate legal remedy.   If the defendants have no rights, they are trespassers and plaintiffs have a complete remedy.   If suit were brought by plaintiffs for damages and a recovery were had, no doubt the defendants would desist their mining operation; or, if not, after the title should thus be established then injunction would lie; but, until plaintiffs' exclusive rights are acknowledged or established, we are of opinion an injunction would not be allowed.

The plaintiffs claim that this is not an ejectment bill, as claimed by defendants, because they as well as the defendants are in possession, and therefore it is unlike the case of Tillmes v. Marsh, 67 Pa. 507, cited by defendants.   We are inclined to the opinion that ejectment would lie, if plaintiffs were entitled to the exclusive possession, and they were deprived of this by reason of the joint possession of the defendants.   But, however this may be, an action of trespass would be an adequate legal remedy, if the defendants have no rights in the premises.

Plaintiffs further reply that the court has jurisdiction, because the bill is one for discovery of defendants' title and is in the alternative; and in the fourteenth paragraph of the bill they pray " that should said will be otherwise construed, and should the court be of the opinion that under and by virtue of said

last will and codicils a right and privilege to mine and take away ore from the complainant's lands were owned and possessed by said Ed. F. Shoenberger and in such wise as to inure to the benefit of his vendees, and if it should be made to appear that these defendants are the lawful successors to and owners of said right and privilege, yet the claims and acts of said defendants in mining and carrying away iron ore in quantities largely in excess of what would be sufficient to supply and furnish one furnace of the size and capacity of said Gap Furnace, as.described and referred to by said testator in his said last will and testament, are contrary to equity and good conscience." They cite Wilhelm's App., 79 Pa. 120, and especially that part of the opinion where the Supreme Court say " that a bill containing a prayer framed with a double aspect forms no objection to it."

The rule has been accurately stated by Lord HATHERLY in Rawlings v. Lambert, 1 Johns. & Hem. 466: " You have no right to allege two inconsistent states of fact, and ask relief in the alternative, for the two cannot be true; but you have always a right to state the facts of the case, the documents, and deeds, and ask the conclusion of the court on those facts and documents, and say the court may come to one conclusion of law, or it may come to another. And you may ask the court to come to a conclusion on the facts you have disclosed, having stated everything that will enable the court to form a proper judgment; you may ask the judgment of the court on two alternatives."

Plaintiffs, of course, would be entitled to file a bill for a discovery of title, but the answer fully disclosed that. That part of the bill is but incidental; and so as to the prayer for an account, as there is no dispute as to the quantity of ore mined. The real object of the bill is undoubtedly to establish the rights of the parties. Can suitors, by the introduction of incidental matters, about which there is no dispute, by framing a bill in the alternative give jurisdiction to disputed questions of title? There is no doubt that, when the court has jurisdiction as to part of the property, the entire subject will be adjudicated, even if an action of ejectment would be an adequate remedy for a part, as was ruled in Socher's App., 104 Pa. 609. And, if plaintiffs conceded that the defendants had any rights under

Master's Report.

the will of Dr. Shoenberger, but contended that they were limited in their rights to a sufficient quantity of ore for the supply of one furnace, of the capacity at the time of the reservation in the will, then the case would be very similar to Alden's App., 93 Pa. 182, and we would have no doubt as to the jurisdiction.

But Wilhelm's Appeal, so much relied on by the plaintiffs, is entirely different in its circumstances. That was a bill praying for an account of ores taken from a tenancy in common, setting forth title, &c. Afterwards, the bill was amended by charging that ores had been taken outside the limits of what had been described as the common property in the original bill, and contained a prayer in the alternative, asking an account co-extensive with what the court should decide, from the title set forth, to be the tenancy in common. In the opinion, the court say : " Nor is there any doubt that, though a question of title may be necessarily involved, it is within the jurisdiction ; for, where there is jurisdiction of the subject matter, that carries with it the jurisdiction to decide every incidental question that is necessarily involved." " If, upon a bill for an account between tenants in common, a question arise as to the extent of the land comprised in the title, surely it must be competent for the court to determine it in order to make an end of the controversy." In Allison's App., 77 Pa. 221, also cited by plaintiffs, the court say, " as a general principle, where the court has obtained jurisdiction for one purpose, it may retain it for general relief." Sheetz's App., 35 Pa. 88 ; Unangst's App., 55 Pa. 128 ; Gass's App., 73 Pa. 39 ; Carty's App., 5 W. N. 241 ; and numerous other authorities were cited by plaintiffs, but in our judgment they are not analogous cases. None of them conflict with the rule as laid down in North Penna. Coal Co. v. Snowden, 42 Pa. 488 ; Long's App., 92 Pa. 171 ; Tillmes v. Marsh, 67 Pa. 507 ; and most of them are referred to in argument of counsel in Grubb's App., 90 Pa. 228, which, we think, rules this case.

We think the defendants should have demurred to the bill, and the question has been suggested whether the defendants are not too late, after an answer to the bill on its merits, to raise the question of jurisdiction ; but Mr. Justice PAXSON, in Grubb's Appeal, says that all orders and decrees in equity, where there is no jurisdiction, are simply coram non judice, and that the Supreme Court had, on its own motion, dismissed

a bill for this reason. As the question can be raised at any
time, and the defendants have raised it on the argument, and
our opinion being that it is well taken, we can do nothing more
than suggest the dismissal of the bill at the costs of complain-
ants.

To the foregoing report, the plaintiffs filed exceptions alleg-
ing that the master erred in not reporting that the plaintiffs
were entitled to relief under the pleadings and evidence, and in
recommending the dismissal of the plaintiffs' bill. These ex-
ceptions were overruled by the master and renewed on the filing
of his report. After argument thereof before FURST, P. J.,
49th district, holding special term, they were dismissed, the
master's report confirmed, and a final decree entered dismissing
the plaintiffs' bill at the costs of the plaintiffs. Thereupon
the plaintiffs took this appeal, specifying the dismissal of their
exceptions and the decree dismissing their bill, for error.

*Mr. A. T. Freedley* (with him *Mr. B. L. Hewit*), for the ap-
pellants.

Other than cases considered by the master, counsel cited:
Bitting's App., 105 Pa. 521; Washburn's App., 105 Pa. 483;
Ferguson's App., 117 Pa. 426; Earley's App., 121 Pa. 496;
Brush Elec. Co.'s App., 114 Pa. 574; Bierbower's App., 107
Pa. 14; Sterling's App., 111 Pa. 41; Andriessen's App., 123
Pa. 328; Oil Well Packer Co.'s App., 128 Pa. 421.

*Mr. S. S. Blair* and *Mr. Aug. S. Landis*, for the appellee.

Other than cases considered by the master, counsel cited:
Drove Yard Co.'s App., 123 Pa. 250; Penna. R. Co.'s App.,
125 Pa. 203.

OPINION, MR. JUSTICE STERRETT:

The bill sets forth, inter alia, that Dr. Peter Shoenberger
died in 1854, having by his last will and testament devised
certain lands called Bloomfield, and other lands adjacent there-
to, to his daughter Martha Duncan for the term of her natural
life, and, upon her decease, to her surviving children as ten-
ants in common, reserving and excepting "the right and priv-
ilege hereinbefore and hereinafter devised to the owners of

Rebecca Furnace, Sarah Furnace, and Gap Furnace, for to mine and take away iron ore from any of the afore-mentioned or described lands enough to supply one furnace at Rebecca, one furnace at Sarah, and one furnace at Gap works; but the said right and privilege is not to be so exercised as to interfere with the operations of said Bloomfield Furnace and Maria Forges."

That, while the right and privilege aforesaid is devised to the owners of Rebecca Furnace and Sarah Furnace, no such right is devised in any part of said will to the owners of Gap Furnace. That by the first and fifth codicils to his will the testator devised Gap Forge and Furnace to trustees for Edwin F. Shoenberger, whose title the defendants claim that they acquired by certain conveyances unknown to the plaintiffs. That the defendants are constantly, continuously, and daily trespassing on complainants' lands, pretending that they have a right to do so under the above-recited provision in the devise of Bloomfield to these complainants, and that they further claim a right to take away iron ore sufficient to supply not only the Gap Furnace, which existed at the time of testator's devise, but an entirely new furnace which they have erected, requiring five times as much iron ore as the former one. That the claims of the defendants are without foundation; for, if any such right or privilege was devised in any way, it was devised to testator's daughter, Sarah McCormick, and not to Edwin F. Shoenberger, the defendants' predecessor in title; and that, even if otherwise, the said right was personal in said Edwin F. Shoenberger, and, if any right existed, the amounts of ore taken were wholly inordinate and excessive. The prayers of the bill are, 1. for discovery of defendants' title; 2. for an injunction; and 3. for an account corresponding with the rights of the defendants, if any they have, as the same may be determined by the court. The amended bill avers that if the defendants have any rights at all in the premises, they must, under the express terms of the devise, be exercised in such manner as not to interfere with complainants' works and the operation of their mines, etc.

In their answers, the defendants aver that by divers conveyances the right and title to Gap Forge and Furnace became vested in them; that, by his last will and testament, Dr. Shoenberger devised to the owners of Gap Furnace, and as

appurtenant thereto, the right to take iron ore from Bloomfield mines sufficient to supply one furnace at Gap; that the right to take ore, as aforesaid, from Bloomfield mines, as an appurtenant of Gap Furnace, has always been recognized, and was never questioned until the same was denied by the plaintiffs in their bill. The defendants also deny that they are restricted in the quantity of ore to be taken from Bloomfield, to the size and capacity of the original structure of Gap Furnace.

It appears from the record that the claim of the defendants to mine and take ore from the Bloomfield lands is grounded on their alleged legal right to do so. That right is not only expressly denied by the plaintiffs, but they also deny that the defendants have any title to the Gap Furnace and Forge, and call upon them to set out in their answer an abstract of their title. The legal right of the defendants to do the acts complained of, was thus the controlling question in the case. In view of that, the learned master rightly held that the plaintiffs had mistaken their remedy, and in a clear and exhaustive opinion, fully sustained by reason as well as authority, he recommended that the bill be dismissed. Exceptions to his report were overruled by the court, and the bill was dismissed.

The familiar principle recognized in the cases cited by the learned master and court below is, that, where the case hinges upon a disputed legal title, that title must be first settled in an action at law. As was said in North Penna. Coal Co. v. Snowden, 42 Pa. 488: "The right of the plaintiff must be acknowledged, or established at law, before he can resort to a chancellor." In Grubb's App., 90 Pa. 229, the right of a party to take ore from the land of another was disputed, and depended on the construction of a deed, etc. The bill for an account was dismissed, on the ground that the question was a legal one, properly belonging to a court of law. Again, in Ferguson's App., 117 Pa. 426, the principle is thus stated by the present Chief Justice: "Where rights which are legal are asserted on one side and denied on the other, the remedies are at law. They cannot be settled under equity forms."

It is not our purpose to elaborate the principle on which the court acted in adopting the recommendation of the master and dismissing the bill. That has been sufficiently done in the re-

Statement of Facts.

port of the learned master, and in the opinion of the court below.

> Decree affirmed, and appeal dismissed, at the costs of appellants.