Francis B. Saunders, Appellant, *v.* The Racquet Club.

*Equity—Jurisdiction—Remedy at law—Alley.*

A bill in equity for a mandatory injunction to compel defendant to tear down a wall on land of which he is in possession, and of which neither plaintiff nor his predecessors in title ever had possession, is an ejectment bill, of which equity has no jurisdiction, the remedy at law being complete and adequate.

*Equity—Horizontal severance—Legal title—Jurisdiction—Ejectment.*

Where the plaintiff in a bill in equity seeks to compel the defendant to remove a wall on land of which the defendant is in possession, and plaintiff claims that by a deed to one of defendant's predecessors in title defendant's estate was for four feet from the boundary line cut off from extending indefinitely upwards, by a horizontal boundary fixed at twelve feet from the surface, plaintiff's right is a purely legal one, which the law must determine before equity will enforce it. The severance in such case is by a boundary as clearly defined as if the four feet had been cut off at the surface instead of twelve feet above it.

Argued Jan. 14, 1895. Appeal, No. 71, July Term, 1894, by plaintiff, from decree of C. P. No. 1, Phila. Co., Sept. Term, 1893, No. 912, dismissing bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to compel the removal of a wall. Before
BRÉGY, J.

The facts appear fully by the opinion of the Supreme Court.

*Error assigned* was decree sustaining demurrer and dismissing bill.

*John G. Johnson, John Marshall Gest* with him, for appellant.—A court of equity had jurisdiction, because the injury is such that damages will not afford an adequate compensation or redress. This is a trespass of a permanent nature, such as existed in Masson's App., 70 Pa. 26; Bierbower's App., 107 Pa. 14; Earley's App., 121 Pa. 496.

Jurisdiction in equity depends not so much on the want of a common law remedy as upon its inadequacy, and its exercise is a matter which often rests in the discretion of the court: Warner v. McMullin, 131 Pa. 370; Snyder's App., 8 Atl. Rep. 26; Hacke's App., 101 Pa. 245.

Nor is it necessary in this case to have the plaintiff's title determined by an action at law. Equity has immediate jurisdiction: Hacke's App., 101 Pa. 245; King v. McCully, 38 Pa. 76; Shipley v. Caples, 17 Md. 179; Bitting's App., 105 Pa. 517.

The cases holding that the legal title must first be established at law are readily distinguishable.

In Rhea v. Forshty, 37 Pa. 503, a bill in equity was filed for the removal of a nuisance, to wit, the defendant's obstruction of an alleged alley way over which the plaintiff claimed a right of way. The bill was dismissed on the ground that the plaintiff's right should have been established first by an action at law; but in this case none of the deeds contained any reference to the alley.

A similar criticism applies to King v. McCully, 38 Pa. 76.

In Mowday v. Moore, 133 Pa. 598, a bill in equity was brought by the plaintiff against an adjoining landowner, averring careless and negligent construction of the defendant's building, by which water running through his lot was caused to flow under and through the foundation walls of his building into plaintiff's cellar. It was really a question of negligence, and the damages were such as were capable of compensation by money.

*E. H. Bohlen*, *J. S. Clark* with him, for appellee.—The complainant seeks a court of equity to establish a legal right which the allegations of the bill show is of doubtful validity and is denied by the defendant; her alleged damages are neither immediate nor irreparable, therefore equity has no jurisdiction: Rhea v. Forsyth; 37 Pa. 503; North Penna. Coal Co. v. Snowden, 42 Pa. 488; Washburn's App., 105 Pa. 480; Norris's App., 64 Pa. 275; Tilmes v. Marsh, 67 Pa. 507; Haines' App., 73 Pa. 169; Grubb's App., 90 Pa. 228; Ferguson's App., 117 Pa. 426; Newcastle v. Raney, 130 Pa. 546; Moore v. Mowday, 133 Pa. 598; Mirkil v. Morgan, 134 Pa. 144; Duncan v. Iron Works, 136 Pa. 478; Wood v. Magrath, 150 Pa. 451; Parker v. Woolen Co., 2 Black, U. S. 545; Bispham's Equity (5th ed.), sec. 444; Adams's Equity, 211; Le Fevre v. Le Fevre, 4 S. & R. 241; Jackson v. Buel, 9 Johnson, 299; Tilmes v. Marsh, 67 Pa. 507.

The words of the deed from Denniston to the Racquet Club cannot operate as an estoppel upon the defendant to deny the right which the complainant claims.

An estoppel by deed can only affect parties and privies: Water's App., 35 Pa. 523; Allen v. Allen, 45 Pa. 468; Province v. Crow, 70 Pa. 199; Bigelow on Estoppel (5th ed.), 334.

It is well settled that there is no estoppel where the sources of information are equally open to and within the knowledge of both parties: Hepburn v. McDowell, 17 S. & R. 382; Commonwealth v. Moltz, 10 Pa. 531; Hill v. Epley, 31 Pa. 331; Thompson's App., 126 Pa. 367.

A party cannot maintain an estoppel against another on account of a representation, unless the party alleging the estoppel would have been affected by the representation if it had been against his interest: Province v. Crow, 70 Pa. 199; Cramer v. Carlisle Bank, 2 Grant's Cases, 267.

In order that a representation may operate as an estoppel, it must have been intended by the party making it, or reasonably inferred by him, that the other would act upon it: Andrews v. Lyons, 11 Allen, 349; Bigelow on Estoppel (5th ed.), 443, 570, 628–637; Brant v. Va. C. & I. Co., 93 U. S. 326; Hobbs v. McLean, 117 U. S. 567; Bloomfield v. Charter Oak Bank, 121 U. S. 138.

OPINION BY MR. JUSTICE DEAN, October 7, 1895:

The plaintiff, Frances B. Saunders, is the owner of lot 925 on the north side of Walnut street, Philadelphia; the lot has a frontage of forty-eight feet and depth of one hundred and fifty-nine feet; the defendant is the owner of lot 923, adjoining on the east; this has a frontage of thirty-four feet one inch, and about the same depth as 925. The plaintiff claims the right to project her building for the whole depth of her lot, at a height of twelve feet from the pavement, four feet over her line on defendant's lot. The necessary conclusion from the pleadings is, that defendant admits plaintiff's right to so project her building for a depth of fifty-three feet from the front on Walnut street, but denies her right to so occupy its lot back one hundred and six feet, the remaining depth of the lots.

The history of the titles and the language of the grants which give rise to the antagonistic claims, start with the year 1830. At that time, both lots were owned by Jacob S. Waln, who in 1832, by deed duly recorded, conveyed 925 to John Northrop, Jr. After a description of the lot itself in this deed, there follows this additional grant: " Together with the right and privilege of building over a four feet wide alley belonging to the said Jacob S. Waln, adjoining to the eastward of the hereby granted lot, leaving at least twelve feet headway in the clear from the surface of the pavement, he, the said Jacob S. Waln, reserving the right of retaining the three windows as now opened in the wall with reversed blinds. Together with common use and privilege of a three and a half feet wide alley extending northward into George, now Sansom street."

In 1836, Northrop conveyed the lot by precisely the same description to George Mifflin Dallas; the last named having died seized thereof, his administrator, with will annexed, joined by his heirs, on the 28th of March, 1893, by the same description conveyed the lot to this plaintiff. It would seem from the explicit words of this grant she took: 1. Lot 925, forty-eight feet by one hundred and fifty-nine feet. 2. The right to project, at twelve feet from the surface of the pavement, her building over a four feet wide alley, then, 1832, in existence and adjoining her on the east, but belonging to Jacob S. Waln, the grantor. 3. The privilege of using as a passageway, in common with Waln, a three and a half feet alley extending northward to Sansom street.

This, we say, appears to be the obvious intent of Waln's first deed in 1832, when he owned both lots, and had the right to do with his remaining one what he chose. The extent of the grant is not uncertain; true, the depth of the four feet alley is not stated in the deed, but it could be made certain by either party by mere measurement, for it was not an alley to be opened, but one there then, belonging to Jacob S. Waln. And if the title to 923, defendant's lot, had remained in the grantor, it is probable no such dispute as is now before us could have arisen. But Jacob S. Waln having died seized of 923, his executors, in 1889, by deed conveyed that lot to Edward E. Denniston. The averments of the complaint do not give us the words of the grant to Denniston; but we infer, from the 5th paragraph, which sets out that, " Waln being seized of the premises subject to the right or privilege of Northrop, died, and by authority of his will, his executor conveyed lot 923 to Denniston," that the reservation in his deed was measured by the right or privilege in Northrop's.

Then Denniston, in 1890, conveyed 923 to the Racquet Club, this defendant. The words of the reservation in this deed are as follows : " Under and subject nevertheless, as respects a part of the said hereinabove described and granted lot of ground, to wit, the Westernmost four feet in width thereof, extending· one hundred and fifty-nine feet in depth, Northward from the north side of said Walnut street to a certain building right and privilege as granted by Jacob S. Waln (a former owner of the said hereby granted premises) and wife to John Northrop, Jr., his heirs and assigns, by deed bearing date the 13th of April, 1832."

The scrivener here, instead of limiting the reservation by a mere reference to the grant in the Northrop deed, or by a repetition of the exact words of it, goes further, and undertakes to interpret it. As plainly as language can express the thought, he says, the original grant conferred on Northrop a right and privilege to build for one hundred and fifty-nine feet, four feet over on the lot, then being granted by Denniston. Certainly as argued by appellee, he says, it is a reservation of that which was granted to Northrop, but he just as certainly says that was a right to Northrop to project his building for one hundred and fifty-nine feet, four feet over on Waln's other lot. The Den

niston deed to defendant was put on record in 1890, and was noticed by plaintiff in 1893, when she purchased 925. She avers her purchase was in part, at least, prompted by the belief, from this deed, that her right to build four feet over on defendant's lot extended the whole length of her lot; and this, on the pleadings, must be taken as verity. Her building, for fifty-three feet from the front, does extend four feet over on 923; but at the end of that distance, by a wall built by defendant, further extension towards Sansom street of the projection is obstructed. She therefore prayed for an order on defendant to tear down and remove the wall that she might enjoy her alleged right under her deed.

The defendant demurred:

1. Because a court of equity has no jurisdiction; the plaintiff's remedy, if she have any, being at law.

2. Because her alleged right is not clear and explicit, and her damage not immediate or irreparable.

3. Because her complaint is defective in substance.

On hearing, the court below overruled the first and third grounds of demurrer, sustained the second, and dismissed the bill,—hence this appeal.

The effect of the demurrer is to admit all the material averments of the bill, and there remain but two questions to be answered, and on the answers depend the rights of the parties.

1. What is the legal effect of a description in a deed between strangers to plaintiff,—the deed of Denniston to defendant? 2. Does the acceptance and placing on record by defendant of this deed, in view of the admitted facts, estop it from denying plaintiff's right to build over the entire depth of her lot? It is not our purpose to attempt to answer either question because plaintiff's right, as held by the court below, is not clear, and because equity is without jurisdiction to determine them. This is clearly an ejectment bill; the remedy at law is complete and adequate. We are asked to order defendant to tear down a wall on land of which it is in possession, and of which neither plaintiff nor her predecessors in title ever had possession. She claims the legal right to that in which defendant denies her right. If she have such right, it is because the written grants distinctly define it. Defendant's estate, which, in 1832, extended indefinitely upwards, was, according to her claim, cut

off by a horizontal boundary fixed at twelve feet from the pavement; its right of possession to that above, she avers, there ended, and hers commenced. If this be so, then the severance of lot 923 is by a boundary as clearly defined as if the four feet had been cut off at the surface instead of twelve feet above it. The owner of land may sell and convey a seam of coal beneath the surface, and retain his right to all beneath the seam parted with, as well as to the surface above; the horizontal boundary of his grant is defined by the thickness of the coal seam; his estate downwards is severed. Where the right in such cases is a purely legal one, the law must determine it before equity will enforce it. As is said by STRONG, J., in Coal Co. v. Snowden, 42 Pa. 488: " But where the complainant himself avers that his right is denied, and where that denial is the very ground of his complaint, it would be a novelty indeed for a court of equity to assume jurisdiction." This was said in a case where a mining right resting on a legal title was denied. The same thing in substance was said by SHARSWOOD, J., in Tillmes v. Marsh, 67 Pa. 507, where the right to build over a three feet alleyway depended on a legal title; and by the present chief justice in Duncan v. Iron Works, 136 Pa. 478, which was a contest over the right to mine iron ore resting on a legal title averred on one side and denied on the other.

Nor is there any inadequacy of remedy at law in this case not present in every case, where one in possession refused to quit until ousted by a writ of hab. fa. possessionem. The method of trial of such cases before a chancellor may be less vexatious, and his commands more ·prompt and peremptory than the trial and processes before a court of law. But the right of possession and compensation for the wrongful detention of it, can be determined with as much certainty in the one court as the other. If the alleged rights were those of joint tenants or tenants in common, it might be otherwise; but here they are neither; are as effectually severed and as clearly defined as a boundary between separate owners of the surface.

For these reasons, we think the court was right in sustaining the demurrer. Therefore, the decree is affirmed.