Lackawanna Ice Company et al. *v.* Weingartner et al., Appellants.

Argued December 2, 1937. Before SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

Robert von Moschzisker, with him Francis Johns Gafford, Smith & Paff and Erdman & Williams, for appellants.

W. B. Eilenberger, with him Harvey Huffman and Harold C. Edwards, for appellees.

OPINION BY MR. JUSTICE LINN, January 3, 1938:

Plaintiffs, who are lessor and lessee, filed their bill against defendants, now appellants, averring that defendants had pulled down a fence which the plaintiffs had constructed on their own land. They averred the title under which they hold and that their land includes almost all of Lake Poponoming. They also set forth the title by which the defendants hold and say of it that the tract so conveyed to defendants "includes the small portion of Lake Poponoming not owned by" the plaintiffs. They averred that defendants' purpose in pulling down the fence was to afford access to the lake generally and to use it in disregard of the rights of plaintiffs as owners of nearly all the lake. The bill prayed for an injunction, etc.

Defendants, by preliminary objection, challenged the jurisdiction in equity pursuant to the Act of June 7, 1907, P. L. 440, 12 PS section 1227 et seq., and desired the case certified to the law side. The refusal to certify is the point for review.

It may first be noted that the learned chancellor seemed to be in doubt about the matter as appears from his opinion in disposing of defendants' preliminary objection. He said: "While it is true, as Defendant urges, that this bill raises questions to which, if standing by themselves there would be adequate remedy at law, and which, as we view it, will require determination by a jury before the matters here involved can be fully ad-

judicated; but, these questions are, to a great degree, incidental to the principal question at issue, i. e. the right of the Defendant to use this lake. The latter question is not dependent on exactly where the line between the two properties may be, and would not be affected whether or not the line be where the Plaintiffs allege it to be; this question is a claim of incorporeal right—an easement—consequently, it cannot be made the subject of an action of ejectment. It is perhaps true that Plaintiff might protect his rights, if the easement does not exist, through actions in trespass, but, from the allegations in this bill, to undertake to do this would result in a multiplicity of suits, and from a multiplicity of suits the Plaintiff may seek equity to relieve him and have his rights there determined."

In defendants' answer, which was then filed, they made certain denials of plaintiffs' title and rights claimed. They denied that plaintiffs held title to the land upon which the fence was erected. A quotation from the answer will indicate the character of another issue: "it is averred that the Lackawanna Ice Company [the owner-plaintiff] did not acquire a good, sufficient, undivided and absolute title in fee simple to Lake Poponoming by virtue of the deed mentioned in Paragraph '3'; and it is further denied that the Lackawanna Ice Company acquired exclusive control of all of Lake Poponoming excepting a small portion containing 10,718 square feet; and for further answer thereto it is averred that one of the defendants, Andrew M. Weingartner, by deed from George L. Arnold et al., recorded in the office for the Recording of Deeds at Stroudsburg, in and for the County of Monroe, in Deed Book 81, Page 387 &c., as the absolute fee simple owner of a portion of the Lake, acquired the right to use not only the waters covering the defendant's land, but all the water of Lake Poponoming, as a right appurtenant to the land and the water covering said land, by virtue of his deed and the deeds of his predecessors in title." It was also averred that defend-

ants and their predecessors in title by adverse user had acquired the right to use the lake.

As bearing on the dispute of title, and therefore on the right of defendants to demand a jury trial, it may now be noted that at the trial, after plaintiffs had rested and defendant had read into evidence certain paragraphs from the bill and the corresponding admissions in the answer, the learned chancellor decided that an issue should be framed for trial by jury. The fact to be determined in that issue was thus stated: "The location of the line on the ground and in Lake Poponoming, Hamilton Township, Monroe County, Pennsylvania, which separates the portion of the ground and the Lake claimed by the plaintiffs and the portion of the ground and the Lake claimed by the defendants." The jury found in accord with defendants' contentions.

The learned chancellor then resumed the trial of the equity case, rejected the verdict and made his own finding on the subject. He also found generally for the plaintiffs and entered a decree restraining the defendants from carrying out their threat to pull down any other fence the plaintiffs might erect on the same location, requiring defendants within 30 days to reconstruct the fence or pay the reasonable cost of doing so, restraining the defendants from making use of the lake generally as they had averred a right to do in their answer and holding that plaintiffs were entitled to damages from the defendants for the use theretofore made.

It is quite obvious, since the learned chancellor at the outset thought, as we understand his opinion, that the issue was one which "will require a determination by a jury before the matters here involved can be fully adjudicated," and also, later, determined that an issue should be framed, as has been stated, that he was in some doubt whether the case was one in which he should determine all the questions or whether defendants were entitled to a jury trial. Questions of title are settled at common law by jury trial, a form of trial protected by

the constitution; equity jurisdiction in Pennsylvania is of statutory origin; when, therefore, a chancellor is in doubt whether to certify a case to the law side for the determination of title or to decide it in the equity proceeding, the doubt should be resolved on the side of the party demanding a jury trial. We all agree that the learned chancellor erred in resolving the doubt the other way.

After what has been said it is unnecessary to recite additional facts at length. Defendants insist that plaintiffs' fence was built on land and water within the area described in the deeds under which defendants hold. If the jury finds that the disputed line is where they claim it is, they were within their rights in removing the fence and the plaintiffs were the trespassers. The dispute was not an incidental one in the legal sense merely because the disputed area was relatively small; the right to an easement was also alleged. Bearing in mind the issues stated, and noting that in plaintiffs' bill they aver that defendants denied plaintiffs' title and asserted an easement and for the enjoyment of their rights took down the fence, what was said by DEAN, J. in *Saunders v. Racquet Club*, 170 Pa. 265, 271, 33 A. 79, is pertinent: "Where the right in such cases is a purely legal one, the law must determine it before equity will enforce it. As is said by STRONG, J., in *Coal Co. v. Snowden*, 42 Pa. 488: 'But where the complainant himself avers that his right is denied, and where that denial is the very ground of his complaint, it would be a novelty indeed for a court of equity to assume jurisdiction.' This was said in a case where a mining right resting on a legal title was denied. The same thing in substance was said by SHARSWOOD, J., in *Tillmes v. Marsh*, 67 Pa. 507, where the right to build over a three feet alleyway depended on a legal title; and by the present Chief Justice in *Duncan v. Iron Works*, 136 Pa. 478, which was a contest over the right to mine iron ore resting on a legal title averred on one side and denied on the other.

"Nor is there any inadequacy of remedy at law in this case not present in every case, where one in possession refused to quit until ousted by a writ of hab. fa. possessionem. The method of trial of such cases before a chancellor may be less vexatious, and his commands more prompt and peremptory than the trial and processes before a court of law. But the right of possession and compensation for the wrongful detention of it, can be determined with as much certainty in the one court as the other. If the alleged rights were those of joint tenants or tenants in common, it might be otherwise; but here they are neither; are as effectually severed and as clearly defined as a boundary between separate owners of the surface."

Equity refused to take jurisdiction until the right at law was determined in *Rhea v. Forsyth,* 37 Pa. 503, involving a claim to use an alley; in *North Pennsylvania Co. v. Snowden,* 42 Pa. 488, where an account of a mining operation was asked in a dispute between persons asserting ownership; in *Lehigh Valley Coal Co. v. Midvalley Coal Co.,* 245 Pa. 402, 91 A. 427, involving the exact location of a boundary line between rival claimants; and in *Hartman v. Pennsylvania Water & Power Co.,* 317 Pa. 417, 176 A. 437, involving the right to overflow lands. See also *Grubb's Appeal,* 90 Pa. 228, and *Duncan v. Iron Works,* 136 Pa. 478, 20 A. 647; *North Shore Railroad Co. v. Pennsylvania Company,* 193 Pa. 641, 44 A. 1083; *Lazarus v. Lehigh & Wilkes-Barre Coal Co.,* 221 Pa. 415, 70 A. 817; *Rice v. Ruckle,* 225 Pa. 231, 74 A. 28; *Miles Land Co. v. Pennsylvania Coal Co.,* 231 Pa. 155, 80 A. 56; *Smith v. Kingsley,* 313 Pa. 574, 170 A. 138.

The decree is reversed; the record is remitted with instructions to certify the case to the law side of the court, costs to abide the final determination.