Overly *v.* Hixson, Appellant.

Argued April 9, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

■ 

 ·

*Myron W. Lamproplos,* with him *Cassidy & Lamproplos,* for appellants.

*John W. Pollins,* with him *Pollins & Pollins,* for appellees.

OPINION BY DITHRICH, J., July 19, 1951:

Defendants appeal from a decree of the Court of Common Pleas of Westmoreland County which permanently enjoined them "from obstructing or interfering with the use and enjoyment by the plaintiffs . . . of the right-of-way . . . running from real estate and farm, owned by the plaintiffs, over and across the real estate of the defendants."

The following facts are not disputed. In 1881 Christopher Fox acquired record title to a farm in East Huntingdon Township containing some 200 acres. By deed dated February 19, 1906, he conveyed out of that farm a tract of 5.9417 acres abutting on its western boundary which ran along the State Highway from Greensburg to Scottdale. The grantees, Sarah S. Fox[1] and Nora A. Fox, took possession of the premises but failed to have their deed recorded. It remained unrecorded until December 30, 1940. Hence despite this conveyance, Christopher Fox, who died intestate April 1,

---

[1] While not an heir of Christopher Fox, the court found that Sarah S. Fox and Nora A. Fox "stood in a family relationship to each other."

1911, was record owner of the full 200 acres at the time of his death.

Minnie Fox Matthews and Nora A. Fox, his sole heirs at law and record owners, therefore, of the 200 acres, conveyed 114.852 of those acres to Freeman F. Johnson by recorded deed dated November 19, 1925. The granted acreage lay east of the Township road which crossed the farm, while most of the remainder lay to the west of that road, between it and the State Highway. Roughly speaking, the Township road and the State Highway run north and south. The deed to Johnson included a grant of the following right-of-way: "together with the right-of-way *over other lands owned by the grantors herein* from the land above described to the State Highway leading from Greensburg to Scottdale 15 feet in width, on and over the private road *as now laid out and used.*" (Emphasis added.)

On December 9, 1935, 60 acres lying west of the Township road, partially bounded by it and the State Highway, were conveyed to George J. Overly by Nora A. Fox, she having obtained absolute title thereto prior to that date. Overly had previously acquired the 114.852 acre tract from Johnson, together with the right-of-way as described in the 1925 deed. His interest in these tracts passed to plaintiffs June 8, 1944.

By various inheritances from Nora A. Fox, Minnie Fox Matthews and Sarah S. Fox, title to a 4.967 acre tract vested in S. F. Matthews and Burton S. Fox. This tract, bounded on the east, north and south by the 60 acre tract, subsequently became vested in defendants by deed dated April 15, 1946.

Plaintiffs alleged that the right-of-way set out in the deed of 1925, after passing over a section of the 60 acres contiguous to the eastern side of the 4.967 acre tract, enters and crosses that tract in a westerly direction, i.e., toward the State Highway. That part of the 4.967 acre tract allegedly traversed by the right-of-way

is overlapped by the description of the 5.9417 acre tract as contained in the deed of 1906, having erected thereon a house which Sarah S. and Nora A. Fox jointly occupied under that deed until their respective deaths in 1940 and 1941.

Defendants do not deny that the grantors in the deed of 1925 purported to create an easement appurtenant whereby the 114.852 acre tract would be a dominant tenement to which "other lands owned by the grantors" would be servient. However, assuming the phrase "other lands owned by the grantors" referred in part to the land presently owned by defendants within the overlap, they do deny that any valid easement by grant was created which burdened that particular land. Their contention is that by virtue of the admitted actual and joint possession of Sarah S. Fox with Nora A. Fox at the time of the grant, Johnson had constructive notice of Sarah's unrecorded interest in the overlapping 5.9417 acres. If he had such notice it would follow that the grant of the right-of-way in the 1925 deed was ineffective to burden the property held in common as against Sarah S. Fox, the nonjoining cotenant. 14 Am. Jur., Cotenancy, §89. If it was ineffective as to her, the parties agree it cannot be effective as to defendants.

The applicable recording Act (Act of 1775, March 18, 1 Sm. L. 422, §1; Act of 1893, May 19, P. L. 108, §1, 21 PS §444) required deeds to be recorded within ninety days of their execution dates and provided that if not so recorded they would be adjudged fraudulent and void against subsequent purchasers for a valid consideration. But it was also the law under this statute, as it has been under all our recording Acts, that subsequent purchasers who had actual or constructive notice of unrecorded deeds were not protected. *Smith v. Miller*, 296 Pa. 340, 145 A. 901; *Detwiler v. Coldren*, 101 Pa. Superior Ct. 189. Actual and exclusive posses-

sion by a grantee who neglects to record his deed has been consistently held to constitute constructive notice of his title. That situation, however, must be distinguished from cases like the one before us, where the owner of the unrecorded interest was not in exclusive possession of the property, but was, rather, in joint possession with one having record title, and where it appeared that between the joint possessors there existed a family relationship.

*Smith v. Miller,* supra, a case involving similar facts, properly states the law as follows (pp. 344, 345): "We said in Salvation Army Inc. Trustees v. Lawson, 293 Pa. 459, 463: 'There can be no doubt whatever of the proposition that where the land is occupied by two persons, as, for instance, by husband and wife, and there is a recorded title in one of them, such joint occupation is not notice of an unrecorded title in the other . . . . . . The rule is universal that if the possession be consistent with the recorded title, it is no notice of an unrecorded title.' Many cases so hold, but it is sufficient to refer to Stewart v. Freeman, 22 Pa. 120, 123; Townsend v. Little, 109 U. S. 504; Kirby v. Tallmadge, 160 U. S. 379, 388; Rankin v. Coar, 46 N. J. Eq. 566. Indeed, this conclusion is but an application of the general principle that, in the absence of proof to the contrary, actual possession is presumed to be in him who has the record title. It would be intolerable to require an intending purchaser or encumbrancer to ask every person living in a property, be they many or few, whether or not he has a better title than the record owner, who is also in possession. This would be to shift the burden of clear proof of notice from him whose neglect to record his deed has caused the trouble, to him who has been guilty of no neglect; and would reverse the rule that the possession of one holding under an unrecorded deed, in order to be effective as against a subsequent purchaser, must be open, notori-

ous, distinct and unequivocal: Rankin v. Coar, supra." See *Miners Savings Bank of Pittston v. Tracy*, 326 Pa. 367, 192 A. 246; *Schell v. Kneedler*, 359 Pa. 424, 59 A. 2d 91; 2 A. L. R. 2d 857 et seq. The rule may also be put as follows: "When the occupation by one is not exclusive but in connection with another, who has the record title and with whom there exists a relationship sufficient to account for the situation, and the circumstances do not suggest an inconsistent claim, such possession will not give notice of a right not appearing of record." 66 C. J., Vendor and Purchaser, §1028.

Defendants argue that the instant case is governed by *Jackson v. McFadden*, 4 W. N. C. 539. There a decedent, who had been in possession of property under an unrecorded purchase agreement, died intestate. His wife and children remained in possession. The widow eventually paid the balance due and took a deed in her name only. A purchaser from the widow was held to have had constructive notice of the equitable title of the children, as heirs of their father, by reason of their continued joint possession of the premises with their mother. But that case rests on certain facts which do not exist here. In a Per Curiam opinion the Court said (p. 540): "From his [purchaser's] own situation *prior to the deed* to Mrs. McFadden he must have known that she and her family were living together as a family, he having lived in the neighborhood and *in the family,* and the *deed to Mrs. McFadden being made only five days before hers to him.*" (Emphasis added.) Although the *McFadden* case was approved in *Smith v. Miller*, 289 Pa. 184, 137 A. 254, decided on the pleadings, that approval was mere dicta. Moreover, when the *Smith* case came up on the merits in 296 Pa. 340, supra, while cited by appellants (p. 341), the Court did not consider the *McFadden* case in its opinion, holding the rule to be as quoted above. No other case has been found in which *Jackson v. McFadden,* supra, has been relied upon to

support the proposition contended for by defendants.

For the aforesaid reasons we are of opinion that Johnson did not have constructive notice of the unrecorded interest of Sarah S. Fox. Consequently, if it is a fact that the granted right-of-way traverses defendants' land as alleged, then the chancellor was correct in decreeing the injunction. However, defendants maintain that if their position as to constructive notice is rejected, nevertheless, it must be held that the court below erred in refusing defendants' request, pursuant to the Act of 1907, June 7, P. L. 440, §1, 12 PS §1227, that the case be certified to the law side of the court for jury determination of the actual location of the right-of-way created in 1925.

In paragraph 22 of defendants' answer and new matter it is admitted that there exists a road laid out over and across that part of defendants' land within the overlap, which road coincides with the course of the right-of-way as alleged by plaintiffs. In paragraph 5, however, defendants deny "that the right of way alleged to be owned by plaintiffs . . . extends over and across the land owned by the defendants," and aver in paragraph 28 that the right-of-way "was intended to cross, did cross and does now cross to a great extent" plaintiffs' 60 acre tract.

It is true that equity has no jurisdiction to restrain by injunction a trespass of a permanent nature, such as the obstruction of a right-of-way, where the legal right relied on by plaintiffs is in doubt. In that case the right must first be determined in an action at law. *Lackawanna Ice Co. v. Weingartner,* 328 Pa. 362, 195 A. 893; *Drum v. Dinkelacker,* 79 Pa. Superior Ct. 91. But where the right is clear and there is no serious or substantial dispute as to the material facts, a court of equity may exercise its power without a prior adjudication at law. *Piro v. Shipley,* 211 Pa. 36, 60 A. 325. To oust the jurisdiction of equity "It is not enough for the

defendant to deny the plaintiff's right; his denial must be based upon facts which show a substantial dispute." *Miller v. Lynch,* 149 Pa. 460, 464, 24 A. 80.

Defendants contend that their denial of plaintiffs' ownership of a right-of-way located on their land was not an empty one, but was based on facts apparent from the deed creating the right-of-way and the testimony given. We cannot agree. The 1925 deed describes the location of the right-of-way as being *"over other lands owned by the grantors . . .* from the land above described [114.852 acre tract] to the State Highway . . . over the private road as now laid out and used." (Emphasis added.) All the evidence points to the salient fact that the right-of-way described in the deed, and as alleged by plaintiffs, runs from the Township road bordering plaintiffs' 114.852 acre tract across the 60 acre tract, thence across defendants' land coincident with the admitted road, thence returning to the lower part of the 60 acre tract to a grade crossing leading to the State Highway.

Plaintiffs' corroborating witnesses, Robert M. Hill and Harvey G. Miller, owners of neighboring lands, had personal knowledge of the location of the described route to the State Highway for more than forty years. It was their testimony that it was a distinct roadway used continuously by themselves, by the parties, by previous owners of the tracts involved and by others, and that no significant change had been made in its course in the past forty years. D. R. Walkinshaw, a professional engineer who made a survey with respect to the division line between the Overly and Hixson farms in 1945 and with respect to the roadway in 1949, testified that the roadway followed the route described and that the cartway was physically visible on both plaintiffs' and defendants' land.

The testimony of defendants' witnesses, as well as that of the defendant Joseph L. Hixson, rather than

being in contradiction to the facts as testified to in the plaintiffs' case, was in confirmation of them. Hixson testified that he farmed for Nora A. Fox and Minnie Fox Matthews during the seven years prior to April 1, 1926. During that time he lived on the 114.852 acre tract where plaintiffs now live. It was his testimony that there was a set of ruts running across the 60 acre tract to a barn situated on what is now that part of defendants' land involved in the dispute. These ruts were never plowed, according to Hixson, but the land on either side of them was always under cultivation. He admitted building a line fence across these ruts after he bought the 4.967 acre tract, indicating they did enter his land. He insisted that other lines of travel, not crossing what is now defendants' land, were used in crossing the 60 acre tract to the State Highway prior to 1926. But he identified no route as "laid out and used" within the terms of the grant creating the right-of-way. Defendants' witness Patrick J. McShane admitted seeing a road through plaintiffs' field up to where Hixson built his fence, but stated it looked more like a path. Defendants' witnesses Harry M. Clawson and William H. Shirey testified that what appeared to be wagon tracks were visible coming over the plaintiffs' land onto the Hixson property. Even defendants' surveyor testified to like effect.

There is no evidence of the existence of any way which proceeds, or proceeded, from the 114.852 acre tract to the State Highway, identifiable as the road "laid out and used" within the terms of the 1925 grant, and located solely on plaintiffs' land, as contended by defendants. The conclusion, therefore, based on the evidence and the language of the deeds, can only be that the course of the right-of-way, as alleged by plaintiffs, corresponds with the course of the right-of-way created by the deed to Freeman F. Johnson. This state of the record requires application of the principle stated in

*Onorato v. Carlini,* 272 Pa. 489, 493, 116 A. 387: "Where, in a proceeding in equity, plaintiff's title is clear and all the evidence relating to it is of such a character that a judge in a trial at law, upon the same evidence, would not be at liberty to submit the question to the jury, equity will grant relief: Richmond v. Bennett, 205 Pa. 470; Wilson v. Cather, 214 Pa. 3, 7." See also *McNanamy v. Firestone Tire & Rubber Co.,* 114 Pa. Superior Ct. 287, 289, 173 A. 492.

Defendants assert that *Lackawanna Ice Co. v. Weingartner,* supra, militates against the applicability of that principle. In that case the Supreme Court, speaking through Mr. Justice LINN, said (pp. 365, 366): "Questions of title are settled at common law by jury trial, a form of trial protected by the constitution; equity jurisdiction in Pennsylvania is of statutory origin; when, therefore, a chancellor is in doubt whether to certify a case to the law side for the determination of title or to decide it in the equity proceeding, the doubt should be resolved on the side of the party demanding a jury trial." But on the same page (365) it was also said: "It is quite obvious, since the learned chancellor at the outset thought, as we understand his opinion, that the issue was one which 'will require a determination by a jury before the matters here involved can be fully adjudicated,' and also, later, determined that an issue should be framed, as has been stated, that he was in some doubt whether the case was one in which he should determine all the questions or whether defendants were entitled to a jury trial."

No doubt as to the certainty of the plaintiffs' right here was ever entertained by the learned chancellor in the court below.

As the Court said in *Piro v. Shipley,* supra, (p. 45), "The answer, it is true, denied some of the material averments of the bill, but the testimony disclosed no

facts to sustain such denial, and hence was not sufficient to oust the jurisdiction of the chancellor."

Decree affirmed.