In re Ronald L. NATALE and
Janet L. Natale, Debtor.

Ronald L. Natale and Janet
L. Natale, Plaintiffs,

v.

French & Pickering Creeks Conserva-
tion Trust, Inc., Lester W. Schwartz
and Frederick L. Reigle, Trustee, De-
fendants.

Bankruptcy No. 98–34221SR.
Adversary No. 99–0231.

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

Aug. 26, 1999.

Dexter K. Case, Reading, PA, for Debtor.

Frederick L. Reigle, Reading, PA, trustee.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### INTRODUCTION

This proceeding concerns the aftermath of a legal battle to enforce upon the debtors a restrictive covenant prohibiting construction of a house on their land. The pivotal issue is whether a judgment for costs and expenses incurred to enforce the covenant takes priority over mortgage liens recorded subsequent to the restrictive covenant but prior to entry of the judgment. For the reasons set forth below, the Court holds that the mortgages have priority.

### BACKGROUND

The genesis of the present proceeding is a secured proof of claim for $100,000 filed by the French & Pickering Creeks Conservation Trust, Inc., and Lester W. Schwartz (collectively referred to as the "Trust"). The claim is based on a judgment entered against the Debtors on January 30, 1989, in Chester County, Pennsylvania. The existence of the claim prompted the Debtors to file the above captioned adversary proceeding for a determination of the validity and priority of the Trust's lien. The Debtors allege in their complaint that the judgment is recorded behind two mortgages on the same property and is subject to avoidance under 11 U.S.C. § 506. The complaint also requests relief under section 522(f), asking that liens on the Debtors' personal property be avoided because they impair exemptions.

The Trust responded to the complaint by filing a combination answer, cross claim and motion for dismissal or abstention. The answer, cross claim and motion are all premised in part on the same argument, which is that the priority of the judgment relates back in time to the attachment of the restrictive covenant via the recorded deed, and that the judgment therefore trumps the mortgages. The cross claim portion of the answer seeks to join the mortgagees, First Financial Bank and Commercial Credit Corporation, for the purpose of obtaining an order subordinating the mortgages to the judgment. Nevertheless, the Trust took no appropriate action toward that end, and the mortgagees have not become participants in the proceeding. The Trust's motion for dismissal and/or abstention is somewhat unfocused but appears to request, alternatively, that the complaint be dismissed for failure to state a claim or that the Court dismiss or abstain from hearing the proceeding for lack of jurisdiction. The jurisdictional argument is centered on the state law content of the priority dispute which according to the Trust renders the proceeding noncore.

The motion was scheduled for a hearing on June 16, 1999, whereupon counsel for the debtors and the Trust appeared and presented argument. It became apparent at the hearing that there were few disputed facts between the parties and that the nub of the dispute was the legal question of whether the Trust's judicial lien assumed a position of priority ahead of the mortgages based on the argument that it relates back to the restrictive covenant in the deed. The Court therefore informed the parties that it would treat the motion as one for summary judgment on the lien priority issue and directed the parties to file appropriate briefs and supporting materials. An order to that effect was entered on July 6, 1999. Although the Court signaled to the Trust that its jurisdictional

argument was weak, the Trust has advanced that argument in its brief as well.

Based on the parties' submissions, the following material facts appear undisputed: In 1980, the Trust, as owner of the subject property, executed a sale of the property for $70,000 to one Chester H. Soltys, III. The sale is evidenced by a deed dated March 20, 1980, duly recorded in the office of the Recorder of Deeds in Chester County, Pennsylvania. Inserted in the deed are certain restrictive covenants, including the following covenant limiting the use of the property to farming or as a nature preserve:

> The use of the premises hereby conveyed shall be restricted to farming or for use as a wildlife sanctuary or nature conservation area and for the study of natural history. No buildings shall be placed thereon other than small buildings accessory to such uses.

[Deed dated March 20, 1980, between the French & Pickering Creeks Conservation Trust, Inc., and Chester H. Soltys, III.]

Thereafter, by a deed dated April 5, 1989, Chester H. Soltys, III, conveyed the property to the Debtors for the sum of $175,000.[1] The latter deed contained a restrictive covenant identical to the one in the prior deed.

Nonetheless, following acquisition, the Debtors proposed the erection of a residential structure on the property. Upon announcing their intention to build, the Debtors were sued by the Trust in state court in an action to obtain an injunction against construction. The Court of Common Pleas ("CCP") rejected the Trust's requests for an injunction, and the Trust filed an appeal with the Pennsylvania Superior Court. In the meantime, the Debtor's took advantage of the CCP decision and began construction of a residence. During this period the Debtors caused the property to become encumbered with two mortgages, one in the amount of $260,000 to First Financial Bank and a second in the approximate amount of $15,000 to Commercial Credit Corporation. These mortgages were recorded in Chester County on June 21, 1990, and November 25, 1992, respectively.

As fate would have it, on October 5, 1993, the CCP decision was reversed by the Superior Court which ruled that the covenant could be enforced against the Debtors as written. Following dismissal of a further appeal to the Pennsylvania Supreme Court, the CCP on July 5, 1996, entered an order in conformance with the Superior Court's ruling, permanently enjoining the Debtors from using the property for residential purposes, prohibiting construction of residential structures on the property and, most significantly, requiring that the structure already installed on the premises be "removed." The Debtors were given six months to remove the house and were made liable for costs. The Debtors resisted compliance with the injunction and were eventually found in contempt by the CCP, which ultimately granted authority to the Trust to demolish the house itself. On January 30, 1998, the CCP entered the order at issue in that proceeding granting an award of damages for $100,000 in favor of the Trust and against the Debtors.

At different points in time during these events the debtor's filed three bankruptcy proceedings. The first two bankruptcies were dismissed. The third and present case was filed on November 5, 1998, on the eve of demolition of the house by the Trust. Immediately after the case was filed the Court granted an emergency motion by the Trust for relief from the stay, permitting demolition to go forward. The instant adversary proceeding was filled on March 26, 1999.

## DISCUSSION

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file,

---

1. The deed also lists Augustine L. Natale and Kathleen P. Natale grantees.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.B.P. 7056(c).

### I.

The Court will first address the Trust's jurisdictional objection. The Trust objects to the proceeding going forward in bankruptcy court because resolution of the priority dispute requires the application of state law. The Trust asserts that the state law content of the dispute renders the proceeding noncore and requests the Court to abstain from the matter so that it may be decided in state court.

The Trust's argument is not convincing and goes against the weight of authority. First it must be pointed out that the classification of a proceeding as noncore does not place it outside of the jurisdiction of the bankruptcy court. A noncore classification means that a proceeding may still be heard in bankruptcy court, but, instead of entering a final order in the case, the bankruptcy court is required to issue a recommendation subject to *de novo* review by a district court judge. 28 U.S.C. § 157(c); *Torkelson v. Maggio (In re Guild and Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3rd Cir.1996). Thus, a determination that a proceeding is noncore does not alone remove a case from bankruptcy court, although it does make a decision in favor of abstention more likely. *See* 28 U.S.C. § 1334(c)(1) & (2).

The Court, however, disagrees fundamentally with the Trust's assessment of the proceeding as noncore. While Congress has not set forth a statutory definition for the core/noncore dichotomy, it did codify a nonexclusive list of core proceedings in 28 U.S.C. § 157(b)(2). The list includes under subsection (B) proceedings for the allowance and disallowance of claims and under subsection (K) proceedings to determine the validity, extent or priority of a lien. The present case falls squarely within both of these categories of core proceedings. Furthermore, in section 157(b)(3) Congress specifically instructs that a proceeding should not be given a noncore designation solely because its resolution may be affected by state law.

The core/noncore distinction was an invention by Congress in the 1984 bankruptcy amendments, Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, Title I, § 101, 98 Stat. 333, to shrink the jurisdiction of the bankruptcy court to fit within the constitutional limitations applicable to legislative tribunals described by the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line, Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *Halper v. Halper*, 164 F.3d 830, 835–36 (3rd Cir.1999); *Torkelsen*, 72 F.3d at 1177–79. *See generally* 1 Collier on Bankruptcy ¶ 3.02 (Lawrence P. King ed., revised 15th ed.1999). In *Marathon*, the Supreme Court ruled it unconstitutional for a debtor to sue an unrelated entity in bankruptcy court on a traditional state law contract claim. The defendant in *Marathon* had not filed a claim in the case or otherwise consented to be sued in a nonarticle III forum. Under these circumstances, Justice Brennan, writing for a plurality of the Court, concluded that the adjudication of a state, common law cause of action went beyond the core bankruptcy power of restructuring debtor-creditor relations. *Id.* at 71. Brennan explained that the power to restructure debtor-creditor relations was a public right over which Congress possessed latitude to assign for adjudication to a nonarticle III tribunal, but the adjudication of state, common law causes of action had to remain with judges appointed under Article III of the Constitution.

*Marathon* has not, however, been interpreted to stand for the proposition that the insertion of any state law element into bankruptcy litigation renders a proceeding noncore. Speaking in an analogous setting the Second Circuit stated:

The relevant inquiry is whether the nature of [the] adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power. *In re Wood,* 825 F.2d 90, 97 (5th Cir.1987) (Wisdom, J.); *In re Arnold Print Works, Inc.,* 815 F.2d 165, 169 (1st Cir.1987) (Breyer, J.). . . .

While it is true that the instant adversary proceeding involved a pre-petition breach of contract claim, as in *Marathon,* there is one crucial distinction which Gulf [the defendant] ignores. Unlike the defendant in *Marathon,* Gulf filed a proof of claim in [the debtor's] Chapter 11 case. By filing a proof of claim, Gulf submitted itself to the equitable power of the bankruptcy court to disallow its claim. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 2799, n. 14, 106 L.Ed.2d 26 (1989). As the Fifth Circuit aptly explained,

> " . . . [A] claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy. Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim."

*Wood, supra,* 825 F.2d at 97.

*Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.),* 896 F.2d 1384, 1389–90 (2nd Cir.1990).

On the basis of this reasoning the *Manville* court held that a pre-petition state law contract action could be litigated as a core proceeding where it arose in the claims allowance process. The majority of courts have reached similar conclusions in like circumstances, holding that the existence of a state law element in a cause of action that otherwise arises under title 11 does not render such a proceeding non-core. *Duck v. Munn (In re Mankin),* 823 F.2d 1296, 1307 (9th Cir.1987) (holding that fraudulent conveyance action under 11 U.S.C. § 544(b), based upon state law, was a core proceeding); *N. Parent, Inc. v. Cotter & Co. (In re N. Parent, Inc.),* 221 B.R. 609, 627 (Bankr.D.Mass.1998) (holding that avoidance action under 544(b) was core proceeding despite its reliance upon state law and citing numerous cases in support of that conclusion); *cf. Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 56–60 & n. 14, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (by filing proof of claim creditor submits itself to the jurisdiction of the bankruptcy court for determination of the allowance or disallowance thereof). The Third Circuit has ruled that a proceeding may be classified as core if it invokes a substantive right provided by title 11 or if the proceeding by its nature could only arise in bankruptcy. *Halper,* 164 F.3d at 836.

Under this authority the present adversary proceeding is correctly classified as core. Unlike *Marathon,* this proceeding involves an action arising directly under the Bankruptcy Code, and the defendant Trust is not merely some unrelated third party but a creditor who filed a claim with the Court asserting a secured interest in property of the estate. A proceeding to avoid the Trust's lien and allow its claim on an unsecured basis could only arise in bankruptcy, even if the underlying priority dispute could be independently resolved in state court. In the bankruptcy context, the classification of the Trust's claim as secured or unsecured is integral to the restructuring of debtor-creditor relations that is at the core of bankruptcy power. This proceeding therefore involves the adjudication of rights which the Court is fully empowered to hear and decide.

## II.

Turning to the merits of the case, it is clear that the Trust's argument for granting priority to its judicial lien over the previously recorded mortgages is strained at best. As the Court understands it, the thrust of the argument is that the $100,000

money judgment obtained on January 30, 1998, relates back to the restrictive covenant in the deed and therefore should be deemed to have priority as of the date the deed was recorded. Since the deed was recorded in 1989, prior to the mortgages which were recorded in 1990 and 1992, the judgment, under this theory, would enjoy first priority. The Court is, however, unable to find any support in the law for the Trust's position.

■ Priority of interests in land is determined under Pennsylvania's recording statute, which in pertinent part reads:

Every such deed, conveyance, contract, or other instrument ... which shall not be recorded ... shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands ... are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument ... shall be recorded ... before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim.

21 P.S. 351. This is a race-notice recording statute which as a general rule grants priority to interests in land by the order in which they are recorded. *In re 250 Bell Road*, 479 Pa. 222, 229 & n. 4, 388 A.2d 297, 301 & n. 4 (1978). Unrecorded interests are void against subsequent recorded interests except where the latter party is chargeable with knowledge of the unrecorded interest. *Id.* One facet of the statute which is implicit in its language and in the cases interpreting it is that the law applies only to actual, extant interests, and not to interests that are merely potential or inchoate. This characteristic is illustrated, for instance, by the discussion of bona fide purchaser status in *Long John*

*Silver's, Inc. v. Fiore,* 255 Pa.Super. 183, 386 A.2d 569 (1978):

If [a] ... subsequent purchaser[2] has notice of [a prior] ... agreement of sale or deed, he has no protection as a bona fide purchaser and his title is subject to the interest vested in the first purchaser. Either actual or constructive notice is sufficient to prevent the subsequent purchaser from acquiring the status of a bona fide purchaser. *Overly v. Hixson, supra,* [169 Pa.Super. 187, 82 A.2d 573 (1951)]. Because constructive notice is not limited to instruments of record, a subsequent purchaser may be bound by constructive notice of a prior unrecorded agreement. *Overly v. Hixson, supra; Smith v. Miller,* 296 Pa. 340, 145 A. 901 (1929). This is true because the subsequent purchaser could have learned of facts that may affect his title by inquiry of persons in possession or others who the purchaser reasonably believes know such facts. *Lund v. Heinrich, supra,* [410 Pa. 341, 189 A.2d 581 (1963)]; *Sidle v. Kaufman,* 345 Pa. 549, 29 A.2d 77 (1943)[(1942)].

*Id.* 255 Pa.Super. at 190–91, 386 A.2d at 573. In this passage the court was concerned only with whether a subsequent party knew of an actual prior interest. The possibility that a purchaser could uncover information suggesting the creation of some other interest in the future was beyond the realm of inquiry.

■ Turning to the present case, the Court accepts that the mortgagees were on notice of the deed and the restrictive covenant contained therein by virtue of 21 P.S. §§ 356 & 357. That alone, however, is not sufficient for the Trust to prevail. If the Trust is to rely upon the covenant to establish priority, it needs to show that notice of the covenant was equivalent to notice of the judgment. This latter showing the Trust has failed to achieve. It was in

**2.** The protection afforded under the statute is the same for mortgagees and judgment creditors as it is for purchasers. *Malamed v. Sedel-* *sky,* 367 Pa. 353, 356, 80 A.2d 853, 855 (1951).

no way preordained that the mere existence of the covenant would inexorably lead to entry of a money judgment to compensate the beneficiary of the covenant for its enforcement. Indeed, when the mortgages were created the CCP had just issued an order denying enforcement of the covenant. From the perspective of the parties at the time, a reversal of that order on appeal may likely have seemed remote. But even if the mortgagees knowingly lent money to the Debtors to build a residence in the face of an adverse court ruling, the recordation of the mortgages would still have predated entry of the later money judgment. The mortgagees could arguably be charged with knowledge of a heightened potential for further legal action, but not necessarily more. Certainly, the mortgagees are not automatically charged with knowledge of a specific money judgment that had not yet come into existence.

The case of *Leh v. Burke,* 231 Pa.Super. 98, 331 A.2d 755 (1974), relied upon by the Trust, is easily distinguishable. That case was about the effect of a covenant that actually required the land owner to compensate a developer for the cost of constructing a road abutting his property. Under the circumstances present in *Leh,* a liability arose against the landowner under the express terms of the covenant itself, thereby placing the landowner directly on notice of his financial responsibility. No such language is present in the covenant at issue here and the Trust's invitation for the Court to imply such language and/or intent finds no support in Pennsylvania jurisprudence. Indeed, one can easily imagine the "Pandora's Box" which might be opened were Courts to go down that road.

The Trust's discussion of the *Stendardo* case, *Stendardo v. Federal National Mortgage Association (In re Stendardo),* 991 F.2d 1089 (3rd Cir.1993), and the merger doctrine is extraneous. No issue concerning merger is implicated in this case because the liability at issue is memorialized by a judgment. The Trust's argument based on "equitable subrogation" is equally inapposite. According to the court in *Tudor Development Group, Inc. v. United States Fidelity and Guaranty Co.,* 968 F.2d 357, 361 (3rd Cir.1992), equitable subrogation is a means of establishing liability in circumstances where one party satisfies a financial obligation owed by another. In the present case, the Debtor's liability to compensate the Trust has not been shifted or evaded by the Debtor, although collectibility has certainly been placed in issue by reason of this Bankruptcy case. The Debtor's liability is evidenced by the judgment, and the dispute has now advanced to a determination of the judgment's priority. These circumstances do not call into play the doctrine of equitable subrogation. Perhaps the Trust actually meant to argue that the mortgages are susceptible to equitable *subordination* under section 510 of the Bankruptcy Code, which is a means for reordering lien priorities. Being, however, that equitable subordination has been neither raised in the pleadings nor argued, the Court will volunteer no analysis based on that theory.

### CONCLUSION

The Court finds no merit to the contention of the Trust that the judicial lien it acquired in 1998 should be accorded priority superior to the mortgages recorded in 1990 and 1992. Summary judgment on the issue of lien priority is thus granted in favor of the Debtors and against the Trust. Another hearing will be scheduled to determine any outstanding issues, such as the value of the property and the avoidance of liens on personal property.